

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 8856 | DATE | May 15, 2003 |
| CASE TITLE | ENFRA LLC, et al  v  Rick Caporale | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ■ This case is dismissed pursuant to FRCP41(a)
(10) ■ [Other docket entry]  Memorandum opinion and order entered. Accordingly, defendant's motion to stay the instant suit is denied.

(11) ☐ [For further detail see order attached to the original minute order.]

| X | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAY 3 0 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 10 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENFRA LLC and COMPASS ENVIRONMENTAL, INC., ) ) ) Plaintiffs, ) ) v. ) ) RICK CAPORALE, ) ) Defendant. ) | No. 02 C 8856<br><br>Judge Robert W. Gettleman |

DOCKETED MAY 30 2003

## MEMORANDUM OPINION AND ORDER

On December 9, 2002, plaintiffs Enfra LLC ("Enfra") and Compass Environmental, Inc. ("Compass") filed a six-count complaint against defendant Rick Caporale arising from acts allegedly committed by him during his tenure as Enfra's Chief Executive Officer ("CEO"). In their complaint, plaintiffs assert state law claims for breach of contract, breach of fiduciary duty, and fraud, as well as claims arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Defendant moved to stay the instant action pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236 (1976), in favor of a lawsuit that he brought against plaintiffs in California state court on October 29, 2002. For the reasons stated herein, defendant's motion is denied.

## FACTS

Enfra is an Illinois limited liability company with its principal place of business in Brea, California, and Compass is an Indiana corporation with its principal place of business in

/0

Chicago, Illinois. Defendant resides in California and served as Enfra's CEO from September 2001 through October 2002.

According to plaintiffs' complaint, defendant approached Compass with a proposal to form an entity that would remediate environmentally distressed properties and develop and market products for use in connection with such properties. To this end, on September 5, 2001, defendant, Compass, and Henry Richter (the "Members") formed Enfra, and Enfra and defendant entered into an Employment Agreement through which defendant would serve as Enfra's CEO on the terms set forth therein. The Employment Agreement provides that defendant could be terminated for "cause," which is defined as "conduct which is dishonorable, illegal, unethical or unprofessional." The Employment Agreement further provides that it shall be governed by and construed in accordance with Illinois law.

On September 6, 2001, the Members executed Enfra's Operating Agreement, which sets forth the rights and obligations of the Members with respect to Enfra. The Operating Agreement provides that it, the affairs of Enfra, and the rights and obligations of the Members are to be governed by Illinois law, and that "any action, suit, proceeding or counterclaim of any kind directly or indirectly arising out of or related to [the Operating Agreement] will be litigated in courts having situs in Chicago, Illinois."

Plaintiffs' complaint alleges that, during his tenure as CEO, defendant engaged in "dishonorable, illegal, unethical and unprofessional conduct." For example, according to plaintiffs, defendant caused Enfra to purchase 290 gallons of a product called Bacto-Zyme for resale to Enfra customers. Plaintiffs allege that defendant remitted customers' subsequent payments for the Bacto-Zyme products to The Charbon Group - a company that is 40%-owned by

2

defendant - at defendant's home address, rather than to Enfra. Plaintiffs also allege that defendant made misrepresentations to Enfra's managers regarding the number of states licensed to distribute a product known as Perma-Zyme, thereby inducing Enfra to enter into a licensing agreement to distribute Perma-Zyme. Plaintiffs' complaint further alleges that defendant charged personal expenses to Enfra, violated managers' directives for personal gain, and directed a "donation" of $14,000 worth of Perma-Zyme to The Charbon Group without the approval or knowledge of Enfra's other managers.

On October 23, 2002, Compass sent a letter to defendant requesting his resignation. Rather than resigning, on October 29, 2002, defendant filed suit against Enfra, Compass, and Compass' principal, Jonathon Markoff, in the Superior Court of Orange County, California (the "California suit"), claiming constructive termination of the Employment Agreement. The complaint in the California suit alleged that the "causes of action herein do not arise out of the terms and conditions of the Operating Agreement." On October 31, 2002, defendant resigned as Enfra's CEO.

Plaintiffs filed the instant action on December 9, 2002, asserting six claims: (1) seeking a declaration that Enfra is entitled to terminate the Employment Agreement for cause based on defendant's dishonorable, illegal, unethical and unprofessional conduct as CEO; (2) seeking a declaration that neither Enfra nor Compass has any liability to defendant under the Operating Agreement; (3) breach of contract; (4) breach of fiduciary duty; (5) fraud arising out of defendant's alleged misrepresentations regarding Perma-Zyme; and (6) civil RICO based on a conspiracy between defendant and The Charbon Group to "illegally divert monies and business from Enfra customers to The Charbon Group."

3

On January 7, 2003,[1] Enfra presented a motion in the California court to dismiss or stay the California suit based on the forum selection clause in the Operating Agreement, arguing that Caporale's claims in the California suit arose directly or indirectly out of, and were thus related to, the Operating Agreement. In response, defendant argued that he "does not assert any claim arising out of or related in anyway [sic] to the Operating Agreement." On January 8, 2002, the California court denied the motion, holding that the public policy of the State of California allowed Caporale to pursue his claims based exclusively on the Employment Agreement in California courts.

On January 21, 2003, defendant filed a motion to stay the instant suit under the abstention doctrine announced in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236 (1976). As of the date of the instant motion, the parties had engaged in discovery in the California suit, including interrogatories, requests for documents, and notices of deposition. With this background in mind, the court turns to the legal standards governing the instant motion.

## DISCUSSION

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." AAR International, Inc. v. Nimelias Enterprises S.A., 250 F.3d 510, 517 (7th Cir. 2001), quoting Colorado River, 424 U.S. at 817. Nonetheless, animated by concerns about "wise judicial administration" and "conservation of judicial resources," in Colorado River, the Supreme Court held that under "limited" and "exceptional" circumstances, a

---

[1]The plaintiffs' motion to dismiss or stay the California suit was file-stamped on December 9, 2002, the same day that the instant suit was initiated.

4

federal district court may stay or dismiss[2] an action when there is an ongoing parallel action in state court. Id. at 818; LaDuke v. Burlington Northern Railroad Company, 879 F.2d 1556, 1558 (7th Cir. 1989).

As the Seventh Circuit noted in Lumen Construction, Inc. v. Brant Construction Co. Inc., 780 F.2d 691, 694 (7th Cir. 1985), "a federal court cannot lightly abjure its responsibility to assert jurisdiction." Thus, "if there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." (Internal citations omitted.) AAR International, 250 F.3d at 518.

To determine whether Colorado River abstention is appropriate, a court must first address whether the state and federal actions are parallel. AAR International, 250 F.3d at 518. If the actions are parallel, the court then considers the factors articulated in Colorado River and its progeny to determine whether exceptional circumstances exist warranting abstention. AAR International, 250 F.3d at 518.

Suits are parallel if "substantially the same parties are litigating substantially the same issues simultaneously in two fora." Id. A court asks not whether the suits are "formally symmetrical" or identical, but rather whether there is "a substantial likelihood that the foreign litigation 'will dispose of all claims presented in the federal case.'" Id., quoting Day v. Union Mines, Inc., 862 F.2d 652, 656 (7th Cir. 1988).

---

[2]The Seventh Circuit has held that a stay, instead of a dismissal, is the appropriate procedure because a stay keeps the federal forum available if the state court action does not result in a final judgment. J & A Sales and Marketing, Inc. v. J.R. Wood, Inc., 2002 WL 653897, at *2 (N.D.Ill. April 19, 2002), citing Rosser v. Chrysler Corp., 864 F.2d 1299, 1308 (7th Cir. 1988).

5

Notwithstanding defendant's arguments to the contrary, the court is not persuaded that the instant action and the California suit are parallel. To begin, at least two of the claims in the instant suit - Counts II and V- specifically rely on the Operating Agreement. In contrast, in both his complaint in the California suit as well as his response to plaintiffs' motion to stay or dismiss that suit, defendant maintained that the claims in the California suit are unrelated to the Operating Agreement, presumably to avoid the forum selection clause contained therein. Thus, defendant's own characterization of the California suit belies his argument that the two suits are parallel.

Moreover, Count VI, which seeks damages under civil RICO, is a claim that will not necessarily be disposed of in the California suit, notwithstanding the likelihood that the predicate acts contemplated by the RICO claim will be raised as a defense to the California suit. For example, it is conceivable that plaintiffs could successfully defend the California suit on the basis of the alleged predicate acts, and yet fail to prevail on their civil RICO claim in the instant suit.[3] Thus, the court concludes that the California suit and the instant suit are not parallel.

Even if the court concluded otherwise, abstention would not be warranted in the instant case. Assuming arguendo that the California suit and instant suit are parallel, exceptional circumstances do not exist to justify staying the instant dispute. In Lumen, 780 F.2d at 694-695, the Seventh Circuit articulated the following ten factors that a district court can consider in

---

[3]Curiously, neither party acknowledges that to prevail on a civil RICO claim, plaintiffs must do more than simply demonstrate that defendant engaged in the alleged predicate acts. See, e.g., Williams Elec. Games, Inc. v. Barry, 2001 WL 1104619, at *1-3 (N.D.Ill. Sept. 18, 2001) (denying the defendant's motion for summary judgment because disputed issues of fact existed with respect to, (1) whether a RICO "enterprise" existed, and (2) whether a "pattern of racketeering activity" was present).

deciding whether "exceptional circumstances" exist that would justify deference to the state courts under Colorado River: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

"The decision to abstain is based on an assessment of the totality of the circumstances." Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 900 (7th Cir. 1999). Thus, the district court's decision whether to abstain should not rest on a "mechanical checklist" of the relevant factors, and the weight given to any particular factor will vary greatly from case to case, depending on the particular factual setting of the case at hand. LaDuke, 879 F.2d at 1559, citing Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 16, 103 S.Ct. 927, 942 (1983).

The first and last factors are not applicable to the instant dispute. No property is at issue in the California suit, and there is no evidence that the federal claim is vexatious or contrived. To the contrary, the forum selection clause in the Operating Agreement mandates that all claims and counterclaims arising from that agreement be brought in a court in Chicago, Illinois.

Given the forum selection clause contained within the Operating Agreement, defendant cannot credibly claim that Chicago is an inconvenient forum. See Finova Capital Corp., 180 F.3d at 899 (since Illinois was expressly selected as an acceptable forum for the resolution of

disputes, "neither side can credibly claim that it is being forced to litigate in an inconvenient forum."). Thus, the second factor disfavors abstention.

The desire to avoid piecemeal litigation favors abstention. Arguably, plaintiffs' defense of the California suit will implicate many of the factual allegations underlying its Operating Agreement claims in the instant suit. Thus, the California and federal suits do overlap and involve similar issues. Nonetheless, a complete resolution of the state action will not necessarily dispose of plaintiffs' civil RICO claim. Moreover, as noted in Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 717 (7th Cir. 1982), "it is not enough, to justify abstention, that a failure to stay the federal suit may result in judicial diseconomy--in having two active lawsuits instead of one." Accordingly, although this factor does favor abstention, the court's inquiry does not end here. See AXA Corporate Solutions v. Underwriters Reinsurance Co., 2002 WL 31260009, at *9 ("[P]iecemeal litigation, in and of itself, can hardly be called 'exceptional circumstances.'").

The fifth factor, source of governing law, disfavors abstention. Setting aside the fact that the Operating Agreement and the Employment Agreement provide for the application of Illinois law, and assuming that the California state court is capable of applying Illinois law to the parties' contract claims, Count VI of plaintiffs' claim is brought under civil RICO, which is governed by federal law. This is balanced by the sixth and eighth factors, however, because the parties do not dispute that the state court could exercise jurisdiction over plaintiffs' civil RICO claim if plaintiffs chose to assert that claim in the California suit. See, e.g., Tafflin v. Levitt, 493 U.S. 455, 467, 110 S.Ct. 792 (1990) (holding that state courts have concurrent jurisdiction to consider civil claims arising under RICO).

The seventh factor, the relative progress of the two lawsuits, does not favor abstention. Although discovery has begun in the California suit, there is no evidence that the California suit is nearing resolution or that there are any pending or imminent dispositive motions. Defendant's reliance on Norris v. Miller, 926 F. Supp. 776, 779 (N.D.Ill. 1996), is thus misplaced. Moreover, under Fed. R. Civ. P. 26(a)(1), the parties should already have exchanged initial discovery material in the instant case.

Contrary to defendant's representation in his motion, the ninth factor, availability of removal, also disfavors abstention. The parties in the California suit do not have complete diversity, since Enfra and defendant are both California residents, and thus the California suit is not removable to federal court. As a result, if the instant case is stayed, plaintiffs will be precluded from adjudicating their claims in a federal forum. See J&A Sales and Marketing, Inc. v. J.R. Wood, Inc., 2002 WL 653897 (N.D.Ill. 2002). Moreover, the forum selection clause contained in the Operating Agreement prevents plaintiffs from raising counterclaims premised on the Operating Agreement in a non-Chicago forum, which further mitigates against granting a stay of the instant case.

Only one of the ten factors outlined above clearly favors abstention in the instant case: the order in which jurisdiction was obtained. As noted above, the California suit was filed in October 2002, whereas the instant suit was filed in December 2002. When considered in light of the seventh factor, which examines the relative progress of the two suits, however, this relatively short time differential carries little weight. See also Finova Capital Corp., 180 F.3d at 900 (fact that state action was filed four months before federal action did not support abstention).

9

According to the Seventh Circuit, "If there is any substantial doubt that the parallel litigation will be 'an adequate vehicle for the complete and prompt resolution of the issues between the parties,' it would be a 'serious abuse of discretion' for the district court to stay or dismiss a case in deference to the parallel litigation." AAR International, 250 F.3d at 518, quoting Moses H. Cone, 460 U.S. at 28. As discussed above, because plaintiffs have asserted claims in the instant case arising solely under the Operating Agreement that defendant denies are related in any way to his claims in the California suit, as well as a RICO claim that involves matters unrelated to the Employment Agreement involved in the California suit, the resolution of the California suit will not necessarily resolve all of the claims and issues before this court. The court thus concludes that abstention is not warranted in the instant case.

## CONCLUSION

For the reasons stated herein, defendant's motion to stay the instant suit is denied.

**ENTER:** May 15, 2003

**Robert W. Gettleman**
**United States District Judge**

10